UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DEMARCUS QUINN,

        Plaintiff,                Case No. 2:25-cv-65

v.                                          Honorable Maarten Vermaat

SARAH SCHROEDER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues Unknown Members of the MDOC's Emergency Response Team (Defendant ERT Members) and MBP Warden Sarah Schroeder.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff states that he is suing Defendants in their official capacities only. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that, on January 28, 2025, at approximately 9:30 a.m., Defendant ERT Members removed Plaintiff from his cell to conduct a shakedown and placed Plaintiff in MBP's C-Unit, which had been previously unoccupied for several years because of the presence of black mold. (*Id.*, PageID.4.) Plaintiff was left in the C-Unit for nine hours. (*Id.*) While there, Plaintiff did not receive toilet paper until 11:30 a.m., and was left without a coat, "bed lining," or cleaning supplies for the duration of his stay. (*Id.*) Plaintiff describes that he is now sick. (*Id.*) He describes that he is coughing up "green stuff" and has a "small amount of blood" coming from his nose and mouth. (*Id.*)

Plaintiff alleges that the move to C-Unit was done in retaliation for Plaintiff having received a misconduct report dated January 28, 2025, and for being "falsely found guilty" of a misconduct on November 17, 2023. (*Id.*, PageID.6.) Plaintiff alleges that his "property vanished as well" and that MBP staff failed to process Plaintiff's grievances and wrote Plaintiff misconducts to prevent Plaintiff's transfer and keep MBP operating. (*Id.*, PageID.6–7.) Plaintiff also alleges that MBP staff did not inform Plaintiff that his mother had died until three days after her death. (*Id.*)

As a result of the events described in Plaintiff's complaint, Plaintiff seeks monetary relief and injunctive relief in the form of "punish[ment]." (*Id.*, PageID.9.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

4

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Official Capacity Claims**

Plaintiff sues Defendants in their official capacities. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews*

*v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

In addition to his request for damages, Plaintiff requests that the Court "punish" Defendants. (ECF No. 1, PageID.9.) The Court has liberally construed this request as one for injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v.*

6

*Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at MBP, which is where he avers that Defendants are employed. Plaintiff's request for declaratory relief does not relate to an ongoing violation and is not prospective. Thus, he cannot maintain his claims for declaratory relief against Defendants in their official capacity.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

7

### B. Individual Capacity Claims

Although Plaintiff states that he sues Defendants in their official capacities, Plaintiff primarily seeks monetary relief. As discussed above, monetary relief is only available against Defendants in their individual capacities. Accordingly, the Court will generously construe Plaintiff's complaint as bringing claims against Defendants Schroeder and ERT Members in their respective individual capacities as well.

### 1. Defendant Schroeder

Plaintiff names Defendant Schroeder as a Defendant in the caption of his complaint and in his list of parties, but he presents no factual allegations against her in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not present any factual allegations against Defendant Schroeder. The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)

(quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff's claims against Defendant Schroeder fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant Schroeder liable due to her supervisory position, government officials, such as Defendant Schroeder, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff's factual allegations are insufficient to suggest that Defendant Schroeder encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in any unconstitutional. Therefore, for these reasons, Plaintiff fails to state any claim

9

upon which relief may be granted against Defendant Schroeder. Accordingly, the Court will dismiss Plaintiff's complaint against Defendant Schroeder.

### 2.   Defendant ERT Members

Plaintiff alleges that Defendant ERT Members removed Plaintiff from his cell to conduct a shakedown and placed Plaintiff in MBP's C-Unit, which had been previously unoccupied for several years because of black mold. (ECF No. 1, PageID.4.) Plaintiff alleges that, while in the C-Unit, Plaintiff did not have toilet paper for two hours, and did not have a coat, "bed lining," or cleaning supplies for the nine hours that Plaintiff was left in the C-Unit. (*Id.*) Plaintiff describes that he is now sick, coughing up "green stuff" with a "small amount of blood" coming from his nose and mouth and that his "property vanished as well." (*Id.*) The Court construes Plaintiff's complaint as raising the following claims against Defendant ERT Team Members: First Amendment retaliation claims, Eighth Amendment unconstitutional conditions of confinement claims, and Fourteenth Amendment violation of procedural due process claims.

#### a.   First Amendment Retaliation Claims

Plaintiff alleges that the move to C-Unit was done in retaliation for Plaintiff having received a misconduct report dated January 28, 2025, and for being "falsely found guilty" of a misconduct on November 17, 2023. (ECF No. 1, PageID.6.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

First, Plaintiff does not set forth facts that would indicate that he was engaged in protected conduct. Plaintiff indicates only that he was found guilty of misconduct charges on two occasions.

10

As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 394; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). Moreover, even if Plaintiff did not violate any prison regulation, Plaintiff does not describe the conduct—allegedly protected by the First Amendment—for which he was found guilty. Accordingly, Plaintiff fails to satisfy even the first element of a retaliation claim.

Even if Plaintiff had sufficiently alleged protected conduct, he nonetheless fails to state claim. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff alleges nothing more than the "ultimate fact of retaliation." Plaintiff's complaint does not plausibly suggest that Defendants ERT Members were aware of Plaintiff's unidentified protected activity, let alone that they placed Plaintiff in the C-Unit because of that

11

activity. Therefore, for this reason as well. Plaintiff has failed to state a claim for First Amendment retaliation.

### b. Eighth Amendment Conditions of Confinement Claims

Plaintiff alleges that Defendant ERT Members placed Plaintiff in a unit previously closed due to black mold and left him there without toilet paper for two hours, and without a coat, bed lining, and cleaning supplies for nine hours. The Court has construed these allegations as raising claims for unconstitutional conditions of confinement.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate

indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

First, allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet for a limited period of time, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (citation omitted)). Therefore, Plaintiff cannot bring an Eighth Amendment claim premised on the denial of toilet paper for two hours, or the denial of a coat, bed lining, and cleaning supplies for nine hours. *See, e.g.*, *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (finding no Eighth Amendment violation where inmate alleged that he had "no toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days");

13

*Dellis*, 257 F.3d at 511 ("With respect to Plaintiff's conditions of confinement claims—that he was deprived of a lower bunk, was subjected to a flooded cell, and was deprived of a working toilet—Plaintiff alleged only temporary inconveniences and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."); *Boyington v. Walker*, No. 3:18CV-P134-GNS, 2018 WL 3649027, at *2-3 (W.D. Ky. Aug. 1, 2018) (finding that plaintiff's alleged conditions—no water, no sink, no toilet, no sheets, and no mattress in a cold cell—were of such a short duration (at most two days) that they did not amount to an Eighth Amendment violation); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation."). Thus, Plaintiff fails to state an Eighth Amendment conditions of confinement claim based upon the denial of toilet paper, a coat, bed lining, and cleaning supplies.

Second, as to Plaintiff's claim that he was exposed to black mold, it is certainly possible that exposure to black mold might be sufficiently serious to satisfy the objective requirement, but simply alleging the presence of black mold is not enough. *See, e.g.*, *McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2–4 (W.D. Mich. Sept. 10, 2007) (citing *Brady v. State Farm Fire & Cas. Co.*, No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006); *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005)), *report and recommendation adopted*, (W.D. Mich. Oct. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate). This Court considered a claim regarding black mold exposure in *Patrick v. Schroeder*, No. 2:23-cv-26, 2023 WL 2522057 (W.D. Mich. Mar. 15, 2023), *aff'd*, No. 23-1313, slip order at 2–3 (6th Cir. Oct. 5, 2023). In that case, the plaintiff alleged that his unit had black

14

mold within the walls, making it "uninhabitable for over 10 [years]." *Id.* The Court resolved the plaintiff's Eighth Amendment conditions of confinement claim as follows:

> Here, nothing in Plaintiff's complaint suggests that the mold is airborne. Although Plaintiff states that he has experienced breathing issues, he attributes that to the mold without providing any further explanation or any supporting allegations that could permit the Court to infer that the mold "created a substantial risk to his health." *See Rogers v. Maclaren*, No. 1:20-cv-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020). Plaintiff's general "allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health." *Id.* Plaintiff's allegations, therefore, fail to meet the objective prong of the deliberate indifference standard.

*Patrick*, 2023 WL 2522057, at *5. The Sixth Circuit Court of Appeals affirmed the dismissal stating: "The district court did not err by dismissing Patrick's Eighth Amendment claims. In the body of his complaint, Patrick did not make specific factual allegations against any defendant showing that they knew of and disregarded an excessive risk from the alleged mold." *Patrick v. Schroeder*, No. 23-323, slip order at 2–3 (6th Cir. Oct. 5, 2023). The same result is appropriate here.

Like in *Patrick*, Plaintiff does not set forth any facts suggesting that the black mold in his cell was airborne. Moreover, while Plaintiff contends that he is now ill, he attempts to attribute those conditions to black mold without providing any further explanation or supporting allegations. Furthermore, nowhere in Plaintiff's complaint does he set forth facts indicating that Defendant ERT Members were aware of the presence of airborne black mold in the C-Unit at the time that Plaintiff was temporarily placed in that unit, or that they were aware that placing Plaintiff in the C-Unit for a mere nine hours posed a sufficiently serious risk to Plaintiff's health and ignored that risk. Even if Defendants acted negligently by placing Plaintiff in a unit previously known to contain black mold, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *See Farmer*, 511 U.S. at 835. Thus, for the foregoing reasons, Plaintiff's Eighth

15

Amendment claims against Defendant ERT Members regarding the black mold in the C-Unit will be dismissed.

       c.  **Fourteenth Amendment Procedural Due Process**

  Plaintiff alleges that his "property vanished as well." (ECF No. 1, PageID.6.) While Plaintiff provides the Court with no further details regarding this claim, the Court will liberally construe this allegation as raising a Fourteenth Amendment procedural due process claim against Defendant ERT Members for the deprivation of Plaintiff's property following the shakedown and Plaintiff's temporary move to the C-Unit.

  The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). However, any Fourteenth Amendment claim based upon the deprivation of Plaintiff's property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

  Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, has "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See*

*Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate and, indeed, Plaintiff has state post-deprivation remedies available to him. For example, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state Fourteenth Amendment due process claims regarding the deprivation of his property.

### 3. Additional Claims

Plaintiff alleges that MBP staff failed to process Plaintiff's grievances, wrote Plaintiff misconducts to prevent Plaintiff's transfer and keep MBP operating, did not inform Plaintiff that his mother had died until three days after her death, and transferred Plaintiff to another facility "to future retaliate" against him for writing a grievance about the events in the complaint. (ECF No. 1, PageID.6–7.) However, the Court need not reach the merits of those claims. As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544.

Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were involved in the processing of Plaintiff's grievances or the issuance of misconducts, and Plaintiff does not plead facts that would plausibly suggest that the named

Defendants were involved in informing Plaintiff of the death of his mother. Thus, to the extent alleged, Plaintiff fails to state claims against Defendants Schroeder and ERT Team Members related to these allegations.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: May 15, 2025

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge